UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | | |
|---|---|---|
| MICHAEL COFFELT | ) | |
| | ) | |
| Plaintiff, | ) | 2:04-cv-01384 JWS |
| | ) | |
| vs. | ) | ORDER AND OPINION |
| | ) | |
| CITY OF GLENDALE; and | ) | [Re: Motions at docs. 126 and 134] |
| LAURA BEELER, and | ) | |
| J. CARLO, individually and as | ) | |
| officers of the Glendale Police, | ) | |
| | ) | |
| Defendants. | ) | |

## I.  MOTIONS PRESENTED

At docket 126, plaintiff Michael Coffelt filed a motion *in limine* to exclude expert testimony by Ron McCarthy.  Defendants responded at docket 138.  At docket 146, plaintiff replied.  Oral argument was not requested and would not assist the court.

At docket 134, defendants filed a motion *in limine* asking the court to exclude evidence relating to a state court criminal case.  Coffelt responded at docket 137. Defendants did not file a reply.  Oral argument was not requested nor would argument assist the court.

## II.  BACKGROUND

In his amended complaint, Coffelt alleges that defendants used unreasonable, unnecessary, and excessive force while executing a search warrant at 1121 West Ironwood Drive, a Hells Angels' clubhouse in Phoenix, Arizona.[1]  The search warrant was issued by a federal magistrate judge and was executed by Glendale police officers in a joint operation with the federal Bureau of Alcohol, Tobacco, and Firearms ("ATF").

Coffelt alleges that he was the only occupant of the clubhouse when the warrant was served, and that Glendale police officer Laura Beeler discharged her rifle at him six times, inflicting permanent injury.[2]  Further, Coffelt alleges that the shooting of a dog on the premises during the execution of the warrant was an unreasonable seizure and unreasonable execution of the search warrant.[3]  The  amended complaint advances federal claims for the breach of Coffelt's constitutional rights pursuant to 42 U.S.C. §§ 1983 and 1988,[4]  as well as state law tort claims, including assault and battery, infliction of emotional distress, outrageous conduct, invasion of privacy, negligence, gross negligence, and negligent training, retention, and supervision generally arising from the same facts and circumstances giving rise to the federal claims.[5]

---

[1]Amended Complaint, doc. 48 at ¶¶ 15 and  28.

[2]*Id.* at ¶ 23.

[3]*Id.* at ¶ 53.

[4]*Id.* at ¶¶ 33-56 and 59.

[5]*Id.* at ¶¶ 57-58.

The court has jurisdiction pursuant to 28 U.S.C. §§ 1331 over Coffelt's federal claims.  The court has jurisdiction to adjudicate Coffelt's state law claims pursuant to 28 U.S.C. § 1367.

## III.  DISCUSSION

**A.  Motion at docket 126**

Resolution of the motion at docket 126 requires consideration of Federal Rule of Evidence 702 which provides as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

To be admissible, expert testimony must be both relevant and reliable.[6]  "Encompassed in the determination of whether expert testimony is relevant is whether it is helpful to the jury which is the 'central concern' of [the rule]."[7]  Rule 702 contemplates that the court will make certain that expert testimony "rests on a reliable foundation."[8]  The district court is expected "to determine reliability in light of the particular facts and circumstances of the particular case."[9]

---

[6]*Daubert v. Merrell Dow Phars., Inc.,* 509 U.S. 579, 589 (1993).

[7]*Elsayed Mukhtar v. Cal. State University, Hayward,* 299 F.3d 1053, 1063 n.7 (9th Cir. 2002) (quoting *United States v. Rahm,* 993 F.2d 1405, 1413 (9th Cir. 1993)).

[8]*Daubert,* 509 U.S. at 597.

[9]*Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 158 (1999).

In the motion at docket 126, plaintiff asks the court to exclude the opinion testimony of defendant's expert witness, Ron McCarthy.  McCarthy is a retired police officer who currently works as a consultant.  According to his resume,[10] McCarthy worked as a police officer for the Los Angeles Police Department for 24 years, retiring in 1984 to become the Chief of Tactical Operations for the federal Department of Energy where he had responsibility for training various law enforcement officers.  Then, in 1986 he moved to a position with the International Association of Police Chiefs ("IACP") where he organized and supervised training courses, including courses in the use of special weapons and tactics as well as the use of deadly force.  In 1993, McCarthy formed his consulting business, but he has continued to teach law enforcement officers for the National Tactical Officers's Association and IACP.  McCarthy is an adjunct professor at the Fullerton Police Academy.

McCarthy has formed several opinions which defendant would like to present in evidence as follows:[11]

1.  Tactical Operation Units commonly called SWAT teams are used to provide support to other units in high risk operations involving persons who are reasonably believed to be armed and dangerous.

2.  The Hell's Angels are an organized crime entity, notorious for being armed and violent such that service of any warrant involving the Hell's Angels is a high risk operation.

3.  There are three methods for serving a warrant known as "take-down away," surround and call-out," and "dynamic entry."

---

[10]Doc. 126-2 at pp. 1-2.

[11]They are set forth in his report at doc. 126-2 at pp. 2-5.  The court has devised the numbering scheme used in the list and has condensed of the opinions from the language actually used by McCarthy in his report.

4.  In service of the warrant in this case "take-down away" was not a viable option.

5.  "Surround and call-out" was an option that could have been used in this case, but at increased risk for a stand-off and injury to citizens.

6.  The use of the "dynamic entry" method was appropriate.

7.  The tactical plan used here involving "dynamic entry" was consistent with the best standards for the use of police tactical operations units based upon eight enumerated considerations—(1) warrant involved firearms, (2) Hells's Angels' history of murder and violent resistance, (3) first hand information from law enforcement officers, (4) police knowledge of location, (5) reliance on views of location from "drive-bys" and overflights, (6) use of "knock and announce," (7) use of flash/sound distraction devices, (8) contingency plan to shoot Rottweiler dog, second entry point, creation of barrier to access the "war-room" in the clubhouse, and provision for emergency medical aid.

8.  Use of deadly force by Officer Beeler was justified because defendant appeared at door with a firearm, and it is reasonable to believe he heard the announcement "Police, Search Warrant," use of flash/sound distraction device, command to get down, and exigency of circumstances.

9.  Officer Carlo's shooting of Rottweiler dog was necessary.

10.  City of Glendale's police department policies are satisfactory and the officers complied with them.


The first issue in the evaluation of McCarthy's opinion testimony is whether it would be helpful to the jury.  It would.  The circumstances in dispute fall well outside the experience of the typical citizen who neither serves nor is served with search warrants. The court concludes that opinion testimony regarding the service of warrants would be helpful to a jury which is tasked with determining whether the service of the warrant in this case gives rise to liability for violating federal constitutional provisions and principles of state law.

The second issue to be addressed is whether McCarthy's opinions rest on a reliable foundation. Before reaching that issue, however, it is appropriate to note that contrary to the implication in plaintiff's briefing, an expert's opinion cannot be excluded simply because it speaks to an ultimate issue of fact which is to be decided by the jury.[12] Turning to the issue of reliability, it must be observed that the opinions offered by McCarthy are not rooted in science or technology; rather, they are derived from specialized knowledge acquired through his training and experience. The fact that the opinions are based on training and experience, by itself, is not a basis for excluding them. Rule 702 clearly contemplates that in appropriate circumstances, a person may be qualified by training and experience to offer opinion testimony. The subject area of McCarthy's testimony, police practices and procedures, is an area in which expert opinion testimony has been introduced in evidence in other cases.[13]

Here, the experience set out in McCarthy's resume establishes that he has substantial experience in police practices and procedures. He had 24 years of experience as a police officer. His knowledge of the field has been sufficient to support his employment by agencies concerned with the training of law enforcement officers in tactical operations. He continues to teach in the area. The court concludes that by virtue of his long experience and continuing involvement, McCarthy is qualified to offer opinion testimony in the field of police practices and procedures, and in particular practices and procedures involving tactical operations of the sort which took place in

---

[12]Fed. R. Evid. 704(a).

[13]*Larez v. City of Los Angeles*, 946 F.3d 630, 635-6 (9th Cir. 1991); *Zuchel v. City and County of Denver, Colo.*, 997 F. 2d 730 (10th Cir. 1993).

this case.  That said, the court does not find that all of McCarthy's opinions are sufficiently reliable to be admitted based only on his qualifications.

The court finds no basis in McCarthy's own personal training and experience to support the proposition that the Hell's Angels in Arizona are an organized crime entity which is known to be violent.  McCarthy's experience with the Hell's Angels is from California, and his direct experience appears to be based on contacts he had more than twenty years ago.  Yet, it is apparent that a significant consideration underlying many of the opinions to be offered by McCarthy turns upon the proposition that the Hell's Angels group involved in this case was known to be violent and therefore posed a high risk to officers involved in the service of the warrant.

With respect to the ten areas of opinion testimony identified above, the court concludes that testimony as to the following would be sufficiently reliable to be admitted under Rule 702: area 1–what SWAT teams are for, area 3–the three alternative means of serving warrants, and a portion of area 10–that Glendale had adequate policies and procedures in place.

With respect to area 2–how dangerous the Hell's Angels may be–McCarthy is not qualified to offer opinion testimony.  The result is that with respect to area 4–"take-down away" method not being viable, area 5 "surround and call-out" being inferior to "dynamic entry." area 6–use of "dynamic entry" was appropriate, and area 7–tactical plan used was consistent with applicable police standards, McCarthy may offer his opinion testimony *only if* defendants first introduce evidence sufficient to support the assumption made by McCarthy that the Arizona Hell's Angels group involved in this case actually was notorious for being armed and violent.

-7-

With respect to area 8–use of deadly force by Officer Beeler, the court finds that plaintiff's objections go to the weight of the opinion, not its admissibility.  The opinion depends upon taking everything Officer Beeler says as being correct.  If the jury which will find the facts concludes that Officer Beeler's version of events is actually correct, then it would be helpful to the jury to hear McCarthy's opinion about her use of deadly force.  On the other had, if the jury does not find that Officer Beeler's version is correct, it would also be helpful to the jury to have heard that in McCarthy's opinion the legitimacy of her use of deadly force was dependent on her version of events.

The shooting of the Rottweiler dog (area 9) could have been necessary only if a dynamic entry was justified.  If defendants are able to present evidence that the level of danger inherent in serving the warrant at the Hell's Angels' clubhouse was high enough to support admission of McCarthy's testimony with respect to areas 6 and 7, his further opinion that it was necessary to shoot the Rottweiler dog would also be admissible.

Finally, with respect to that aspect of area 10 regarding whether the officers followed all applicable Glendale procedures, the court agrees that McCarthy cannot offer a blanket statement of compliance.  However, if asked about a specific act by a specific officer respecting a specific procedure, he is qualified to offer an opinion, and it would be sufficiently reliable for admission in evidence.

Plaintiffs contend in their reply that McCarthy's expert report should not be utilized to address any pending summary judgment motions.[14]  The court finds no reference to McCarthy in the motion for summary judgment at docket 135, and in the

_____

[14]Doc. 146 at 4.

reply at docket 179, there is only a passing reference to McCarthy's testimony being consistent with the testimony of plaintiff's own expert, D.P. Van Blaricom, as well as plaintiff's own testimony.[15]  Defendants' motion papers do not refer to McCarthy's report, nor is it provided as an exhibit.  McCarthy's report itself is hearsay, in any event.  Suffice it to say that McCarthy's report will not be utilized in addressing the motion at docket 135.

**B.  Motion at docket 134**

Coffelt was charged with assault on Officer Beeler in state court.[16]  The Arizona Superior Court, in a decision affirmed by the Arizona Court of Appeals, suppressed evidence obtained in the search of 1121 West Ironwood Drive location on the grounds that the officers did not comply with Arizona's knock and announce statute, A.R.S. 13-3916.  Defendants ask the court to foreclose any reference to any order or decision filed in the state court in connection with the assault prosecution.

Defendants begin their argument by urging that evidence of the state court proceedings is not relevant under Fed. R. Evid. 401.  The rule limits evidence to information which makes it more or less likely that "a fact that is of consequence to the determination of the action" is true.  The court agrees with defendants that the only way the state court decisions would be relevant is if they may be used to foreclose assertion of facts in the case at bar.  Plaintiff does not contend otherwise in his response; rather, he asserts that there are facts established in the state court litigation which the

---

[15]Doc. 179 at p. 6.

[16]Cause No. CR 2003-017275.

defendants are now precluded from disputing by virtue of the doctrine of collateral estoppel.  Plaintiff asserts that the state court's conclusion that Laura Beeler was not a credible witness must be accepted in the case at bar.  Plaintiff also asserts that defendants may not contend that they waited a reasonable length of time between announcement of the officers' presence and the forced entry, because this fact was determined against them in the state court case.

The state court judge's finding respecting Laura Beeler's credibility in the state court suppression hearing has no bearing on how the jury in this case should evaluate her testimony at trial.  It is the jury's sole responsibility to determine the credibility of any witness who may testify.  Whatever Officer Beeler said, however she appeared when she said it, and how the state judge assessed what she said during the suppression hearing cannot limit the jury's right to make its own credibility determination with respect to whatever she may say at trial.

Turning to the assertion that collateral estoppel forecloses presentation of any argument that there was a reasonable interval between the "knock" and the entry, it is appropriate to begin by observing that collateral estoppel, or issue preclusion as it is often now described, applies where an issue or fact was litigated in a prior suit and "a final judgment was entered, and the party against whom the doctrine is to be invoked had a full opportunity to litigate the matter and actually did litigate it, provided such issue or fact was essential to the prior judgment."[17]  The state court proceeding did involve a final judgment suppressing the evidence, and the failure to allow a reasonable interval

---

[17] *Chaney Bldg. Co. v. City of Tucson,* 148 Ariz. 571, 573, 716 P.2d 28, 30 (Ariz. 1986).

of time to pass was essential to the state court judgment.  Of course, the state court decision turned on state law requiring a reasonable interval between the knock and the entry, while the constitutional claims in the case at bar arise under federal law. However, that is a distinction without a difference, because the court agrees with the argument in plaintiff's briefing that both Arizona law and federal law spring from the same common law root and require the same reasonable interval between the knock and the entry.

Defendants assert that the requirement that they had a full opportunity to litigate the matter in the prior proceeding is missing here.  The parties to the earlier case were Coffelt and the State of Arizona.  Neither the City of Glendale, nor individual defendants Beeler and Carlo were parties.  Plaintiff contends that the defendants were in privity with the state in the earlier case such that their interests were adequately represented and so they should be bound by the earlier determination of the issue.  Where there is privity between a prior litigant and a litigant in a later case, collateral estoppel may be used.[18] The Ninth Circuit has explained that privity exists where "there is sufficient commonality of interest."[19]  Here, the interests of the State of Arizona and the present defendants are perfectly congruent with respect to the "knock/enter" issue.  In the earlier case the state sought to establish that a reasonable interval passed in order to avoid the suppression of evidence.  Here, the defendants want to establish exactly the same thing, because that has some bearing on their liability to Coffelt.  Defendants point out that in the earlier

---

[18]*In Re Gottheiner*, 703 F.2d 1136, 1139 (9th Cir. 1983).

[19]*Id.* at 703 F.2d 1140.

case Coffelt did not testify, and that he could not have been required to do so.  This may be true, but it makes no difference.  Defendants point to nothing Coffelt could say that would alter the conclusion about the length of time between the knock and the entry or the reasonableness thereof, and the court can conceive nothing.

It is appropriate to note that the individual defendants here, and through them the City of Glendale, were actors whose conduct was at issue in the earlier case.  Officer Beeler testified in the earlier case, as did a number of other officers, although admittedly not Officer Carlo.  Given the perfect congruity of interests and the relationship of defendants to the earlier case, it is this court's conclusion that the interests of the defendants in the "knock/enter" issues are related so closely to the interest of the state in the earlier case that defendants may be considered to have had their day in court on that limited issue.  That is sufficient to establish privity.[20]

Defendants advance one last argument against application of collateral estoppel to the "knock/enter" issue.  They argue that the doctrine cannot be applied here, because "offensive" use of issue preclusion, as contrasted with its use to defend against a claim, is unavailable under Arizona law.  The court disagrees.  The Arizona Court of Appeals has explained at some length why older cases to that effect are no longer good law and has endorsed offensive use of the doctrine where all of the other requirements are met.[21]

---

[20]*Id.* at 703 F.2d 1139.

[21]*Wetzel v. Arizona Real Estate Dept.*, 151 Ariz. 330, 333-34, 727 P.2d 825, 828-29 (Ariz. App. 1986).

Defendants also contend that the earlier court's decision should be kept out of evidence pursuant to Fed. R. Evid. 403.  However, insofar as the application of issue preclusion to the reasonableness of the time between the knock and the forced entry, the argument is misguided.  Rule 403 applies to consideration of whether otherwise admissible evidence should be excluded.  It is not a limit on the doctrine of issue preclusion.  With respect to any other mention or use of the prior state court proceeding, the court has already determined that such would be irrelevant under Rule 401, so there is no need to reach Rule 403.  This prohibition on any other use of the state court proceeding does not, of course, foreclose proper use of a witness's testimony in the earlier case under Fed. R. Evid. 613 or 801(d).

One final point:  Rather than refer to the state court case to preclude litigation of the reasonableness of the interval between the knock and the forced entry, the court presently contemplates simply instructing the jury that this court has determined as a matter of law that the interval was not reasonable.  The court will entertain suggestions on precisely how to communicate this point to the jury at the final pre-trail conference.

## IV.  CONCLUSION

For the reasons stated above:

(1)  The motion at docket 126 is **GRANTED** in part and **DENIED** in part consistent with the discussion in Part III. A. above; and

(2)  The motion at docket 134 is **GRANTED** in part and **DENIED** in part such that defendants may not contest the conclusion that the interval of time waited between the "knock" and the forced entry was unreasonably short as discussed in Part III. B. above.

DATED at Anchorage, Alaska, this 26th day of November 2007.

/s/ JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE