UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| MICHAEL COFFELT, | |
| Plaintiff, | 2:04-cv-01384 JWS |
| vs. | ORDER AND OPINION |
| CITY OF GLENDALE; and LAURA BEELER, and J. CARLO, individually and as officers of the Glendale Police, | [Re:  Motion at docket 135] |
| Defendants. | |

## I.  MOTION PRESENTED

At docket 135, defendants filed a motion for summary judgment.  Due to Coffelt's failure to comply with the local rules, his initial response was struck, but he was afforded a chance to file a new response in conformity with the rules.[1]  The new response was filed at docket 174.  Defendants' reply appears at docket 179.  Oral argument was not requested and would not assist the court.

---

[1]Order at doc. 169.

## II.  BACKGROUND

Coffelt alleges that defendants used unreasonable, unnecessary, and excessive force while executing a search warrant at a Hells Angels' clubhouse located at 1121 West Ironwood Drive in Phoenix, Arizona.[2]  The search warrant was issued by a federal magistrate judge and was executed by Glendale police officers in a joint operation with the federal Bureau of Alcohol, Tobacco, and Firearms ("ATF").

Coffelt alleges that he was the only occupant of the clubhouse when the warrant was served, and that Glendale police officer Laura Beeler discharged her rifle at him six times, inflicting permanent injury.[3]  Further, Coffelt alleges that the shooting of a dog on the premises during the execution of the warrant was an unreasonable seizure and unreasonable execution of the search warrant.[4]  Coffelt pleads federal claims for the breach of his constitutional rights pursuant to 42 U.S.C. §§ 1983 and 1988,[5] and also pleads state law tort claims, including assault and battery, infliction of emotional distress, outrageous conduct, invasion of privacy, negligence, gross negligence, and negligent training, retention, and supervision generally arising from the same facts and circumstances giving rise to the federal claims.[6]

Section 1331 of Title 28 provides jurisdiction over Coffelt's federal claims. Section 1367 of Title 28 provides jurisdiction over his state law claims.

---

[2] Amended Complaint, doc. 48 at ¶¶ 15 and 28.

[3] *Id.* at ¶ 23.

[4] *Id.* at ¶ 53.

[5] *Id.* at ¶¶ 33-56 and 59.

[6] *Id.* at ¶¶ 57-58.

### III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides that summary judgment should be granted when there is no genuine dispute about material facts and when the moving party is entitled to judgment as a matter of law. The moving party has the burden to show that material facts are not genuinely disputed.[7] To meet this burden, the moving party must point out the lack of evidence supporting the nonmoving party's claim, but need not produce evidence negating that claim.[8] Once the moving party meets its burden, the nonmoving party must demonstrate that a genuine issue exists by presenting evidence indicating that certain facts are so disputed that a fact-finder must resolve the dispute at trial.[9] The court must view this evidence in the light most favorable to the nonmoving party, must not assess its credibility, and must draw all justifiable inferences from it in favor of the nonmoving party.[10]

### IV. DISCUSSION

Although entitled a motion for summary judgment, defendants' motion focuses almost entirely on Coffelt's federal claims. With respect to the state law claims, defendants address only two issues in any detail, whether Coffelt has standing to litigate a claim for the death of the Rottweiler dog, and whether he can recover punitive damages under state law. The standing issue with respect to the dog also has

---

[7] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[8] *Id.* at 325.

[9] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

[10] *Id.* at 255; *Soldano v. United States*, 453 F.3d 1140, 1143 (9th Cir. 2006).

implications for the federal claims.  There is also a passing reference to the proposition that the City of Glendale cannot be liable in a theory of *respondeat superior* which plaintiff appears to have read as applicable to his state law tort claims, not just the federal claims brought pursuant to § 1983.  The court will discuss the issues raised with respect to City of Glendale first and then turn to the other issues raised in the parties' papers.

**A.  City of Glendale's Liability  on § 1983 Claims**

Under the doctrine established by the Supreme Court in *Monell v. Dept. of Social Serv.,*[11] a municipal government is not liable on a § 1983 claim for its employee's violation of a plaintiff's constitutional rights on a theory of *respondeat superior*.[12]  Rather, liability arises only where the violation is caused by the municipal government's policy or custom.[13]  Defendant recognizes that his § 1983 claim against the City depends on the existence of a policy or custom which caused his loss.[14]  Coffelt describes the policy upon which he relies as follows: "Plaintiff will demonstrate that GPD's policy and long standing custom is to accord its officers prioritized treatments and likewise retaliate against individuals that do not readily obey commands.  In this instance, all of the Defendants have continued to embrace their actions as 'business as usual.'  Accordingly, defendants' actions fall within the custom and practice of the GPD."[15]

---

[11] 436 U.S. 658 (1978).

[12] *Id.* at 436 U.S. 691.

[13] *Id.* at 436 U.S. 694.

[14] Doc. 174 at p. 15.

[15] *Id.*

Coffelt goes on to contend that a failure to train the police officers also supports § 1983 liability.[16]

Turning to the first contention, the court notes that Coffelt points to no evidence that the City of Glendale actually had adopted a policy or custom of retaliation against persons who fail to obey commands. At most, his argument is that because he believes officers Beeler and Carlo overreacted and police officials knew of the particular plan of operations to be used by the joint task force in executing the search warrant at the Hells Angels' clubhouse, there must have been a municipal policy advocating such overreaction by police officers. Such an assertion does not support a finding that there actually was a City policy of retaliation, the policy upon which Coffelt relies.

A claim against a municipal government based upon inadequate training may be pursued under § 1983, but it requires a plaintiff to have evidence that there was an inadequate training program, that the municipal government was deliberately indifferent to the inadequacy of the program, and that the inadequate training actually caused the loss.[17] Coffelt identifies no training program used by the City for its police officers. Consequently, he cannot and does not point to any inadequacy in the training program, much less to deliberate indifference by the City to an inadequacy in the program. The City is entitled to summary judgment on Coffelt's § 1983 claims against it, because the undisputed facts show no policy or custom adopted by the City which caused Coffelt's loss.

---

[16] *Id.* at p. 17.

[17] *Merritt v. County of Los Angeles*, 875 F.2d 765, 770 (9th Cir. 1989).

**B.  City of Glendale's Liability on Tort Claims**

A City may be liable for state law torts committed by its police officers acting within the scope of their employment under the doctrine of *respondeat superior*.[18]  This theory is different from the concept of liablity based on a policy or custom required for a § 1983 claim.[19]  Officers Beeler and Carlo were acting within the scope of their employment.  It follows that to the extent that the City of Glendale may have been seeking summary judgment on the state law tort claims on the theory that it could have no *respondeat superior* liability, the motion lacks merit.

**C.  Standing to Pursue Claims Based on Shooting of Rottweiler**

Defendants contend the undisputed facts show that Coffelt did not own the Rottweiler dog shot by Officer Carlo.  Therefore, say defendants, Coffelt lacks standing to pursue any claim based on the dog's death.  Who owned the dog is disputed. Taking the facts in the light most favorable to the non-moving party, there is sufficient evidence to show the Rottweiler was Coffelt's dog to give him standing to sue for its loss.

**D.  Qualified Immunity**

    **1.  Analytical Approach**

A police officer is entitled to qualified immunity from suit for damages based on an alleged violation of a federal law or constitutional provision when the officer's conduct does not violate a right which is clearly established and of which a reasonable person

---

[18] *Patterson v. City of Phoenix*, 103 Ariz. 64, 68, 436 P.2d 613, 617 (Ariz. 1968).

[19] *Monell,* 426 U.S. 691-694.

would have knowledge.[20]  The Supreme Court has explained that in analyzing a claim of qualified immunity, a court should first determine if viewed in the light most favorable to the plaintiff there is sufficient evidence that there was a statutory or constitutional violation.  If so, then a court must determine whether the conduct violated a clearly established right.[21]

### 2.  Officer Beeler

Viewing the facts most favorably to Coffelt, Officer Beeler shot him with her rifle multiple times when he answered the clubhouse door with a firearm in one hand, although the firearm was never raised and pointed at the officer, nor did Coffelt refuse an order to drop the weapon before he was shot.  Coffelt was not suspected of committing any crime.  Thus, viewing the evidence favorably to the non-movant, Coffelt was merely a person in residence at a location from which authorities sought to obtain information, who was not known to be dangerous, who possessed a firearm, but who did not threaten anyone with the firearm.  In sum, the officer's action amounted to application of a standard calling for the officer to shoot anyone on sight who appeared to be armed.  Viewing the facts most favorably to Coffelt, the service of the warrant was not sufficiently dangerous to support the use of deadly force by Officer Beeler under these circumstances.  On this view of the evidence, the use of deadly force to serve the warrant was objectively unreasonable, and violated Coffelt's right under the Fourth Amendment to be free from subjection to excessive force.

---

[20] *E.g., San Jose Charter of Hells Angels v. San Jose*, 402 F.3d 962, 971 (9th Cir. 2005).

[21] *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

The next question is whether the right violated was well established.  It is not enough to find that the general right to be free from excessive force is 04-1384well established. Rather, the court must first define the right violated with appropriate specificity.[22]   Here then, the inquiry becomes whether a reasonable person in officer Beeler's position would have known that a person may respond to a nighttime demand for entry by opening the door with a firearm in hand without being shot by a police officer.

For Officer Beeler's decision to shoot Coffelt to have violated a well-established right, it is not necessary that there be a case directly in point.  Rather, what this court must look to see is whether the unlawfulness of her conduct was apparent in light of pre-existing law.[23]  In *Tennessee v. Garner*,[24] a case involving an apparently unarmed felony suspect who endeavored to escape arrest, the Supreme Court addressed a Tennessee statute which authorized the use of deadly force when a suspected felon attempted to escape arrest.  Finding that application of the statute in some circumstances would not violate the Fourth Amendment, the Supreme Court wrote, "if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape . . . ."[25]  This court finds the reference to the use of the weapon to "threaten" the officer significant.

---

[22]*Id.*, citing *Wilson v. Layne*, 526 U.S. 603, 615 (1999).

[23]*Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

[24]471 U.S. 1 (1985).

[25]*Id.*, at 471 U.S. 11.

The clear implication is that the mere possession of a weapon is insufficient to support the use of deadly force.

This case is a close one, because of the fact that Coffelt was armed. If the evidence at trial were to show that Coffelt raised his firearm or ignored a demand to drop it prior to the time Beeler shot him, it could not be said that she acted in violation of a well-established right. At present, however, the court must proceed on the assumption that the facts are those determined in that light which favors Coffelt's version of events. On such facts, Officer Beeler did violate a well-established right.

### 3. Officer Carlo

Officer Carlo shot the dog. For purposes of the present motion, it must be concluded that Coffelt owned the dog. Furthermore, for purposes of the present motion, it must be assumed that the officers executing the warrant had no plan for dealing with the Rottweiler save the one which was employed–shooting it. On these facts, Officer Carlo violated Coffelt's right not to have his property seized in violation of the Fourth Amendment. Furthermore, this right was clearly established at the time he shot the dog by the Ninth Circuit's decision in *San Jose Chapter of Hells Angels v. City of San Jose*.[26]

### E.. Merits of the § 1983 Claims Against Beeler and Carlo

In the preceding section of this memorandum, the court found that viewing the facts most favorably to the non-moving party, as it must on a motion for summary judgment, both Officer Beeler and Officer Carlo had violated Coffelt's rights under the Fourth Amendment. It is therefore unnecessary to separately consider defendants'

---

[26] 402 F.3d 962, 975 (9th Cir. 2005).

arguments that they are entitled to summary judgment on the merits of the § 1983 claims.  Suffice it to say that defendants are not entitled to judgment as a matter of law on the § 1983 claims, because there are disputed issues of material fact.

**F.  Punitive Damages**

    **1.  State Law Claims**

Arizona statutes foreclose any recovery of punitive damages on Coffelt's state law claims.  A.R.S. § 12-820.04 is squarely in point: "Neither a public entity nor a public employee acting within the scope of his employment is liable for punitive or exemplary damages."  Coffelt makes no attempt to avoid the application of this statute.

    **2.  Federal Law Claims**

Coffelt may not pursue a § 1983 claim for punitive damages against the City of Glendale.  The Supreme Court's decision in *City of Newport v. Fact Concerts, Inc.*[27] holds that municipalities are immune from such claims.[28]

Officers Beeler and Carlo in their personal capacities are not immune from punitive damages claims under § 1983.[29]  However, defendants assert that Coffelt can recover punitive damages from them only if he can prove their actions were outrageous in the sense that they were taken with either an evil motive or with reckless or callous indifference to his rights.  It is true that proff of such conduct will support an award of

---

[27] 453 U.S. 247 (1981).

[28] *Id.* at 453 U.S. 271.

[29] *Smith v. Wade*, 461 U.S. 30, 35-36 (1983).

punitive damages.[30]  Defendants' assertion is incomplete, for as plaintiff points out, if he can prove that the conduct which caused his injury was "oppressive" under the authority of *Dang v. Cross,*[31] he would also be entitled to recover punitive damages.  The issue at hand then is whether the facts here, when taken in the light most favorable to Coffelt would support an award of punitive damages.  The court has little trouble concluding that even viewed favorably to Coffelt the undisputed facts do not show an evil intent by either Beeler or Carlo.  On the other hand, viewed in that light the court is unable to conclude that as a matter of law Beeler and Coffelt did not act with a reckless or oppressive disregard for Coffelt's rights.  It follows that defendants are not entitled to summary judgment on the claim for punitive damages under § 1983 against defendants Beeler and Carlo.

## V.  CONCLUSION

For the reasons above, the motion at docket 135 is **GRANTED** in part and **DENIED** in part as follows:

(1) Coffelt's § 1983 claims against the City of Glendale for both compensatory and punitive damages are dismissed;

(2) Coffelt's state law claims against the City of Glendale for punitive damages are dismissed;

(3) Coffelt's state law claims against the City of Glendale for compensatory damages may proceed to trial;

---

[30]*Id.* at 461 U.S. 46-48.

[31]422 F.3d 800, 805-6 (9th Cir. 2005).

(4) Coffelt's state law claims against defendants Beeler and Carlo for punitive damages are dismissed.

(5) All of Coffelt's other claims, both federal and state, against defendants Beeler and Carlo may proceed to trial.

## VI.  ORDER FOR FUTHER PROCEEDINGS

It appears to the court that this case is ready to be set for trial, provided that there is no reasonable prospect that it may be settled by the litigants.  With dispositive motion practice now complete, settlement should be seriously considered.  If desired, this case could be referred to a magistrate judge for a settlement conference. Wherefore,

**IT IS ORDERED** that the parties shall promptly confer and then on or before **December 14, 2007**, advise the court what are the prospects for settlement and whether the parties would like to have a settlement conference.

DATED at Anchorage, Alaska, this 26th day of November 2007.

>                           /s/ JOHN W. SEDWICK
>                           UNITED STATES DISTRICT JUDGE